## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

NOBLE CHRISTO EL,

       Plaintiff

    v.

ATLANTIC CITY FREEHOLDERS
BOARD OF COMMISSIONERS, *et al.*,

    Defendants

Civil No. 22-6281 (RMB/MJS)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon the amended civil rights complaint filed by *Pro Se* Plaintiff Noble Christo El, who alleges he is confined as a pretrial detainee at Atlantic County Justice Facility under the fictitious legal name Christopher Jones. On March 9, 2023, this Court granted Plaintiff's application to proceed *in forma pauperis* under 28 U.S.C. § 1915(a), and dismissed the complaint without prejudice pursuant to § 1915(e)(2)(B), with leave to file an amended complaint. The amended complaint is presently before the Court for screening pursuant to § 1915(e)(2)(B). (Am. Compl., Dkt. No. 12.) For the reasons discussed below, the amended complaint may proceed in part.

## I.   *SUE SPONTE* DISMISSAL

When a person is granted IFP status, courts must review the complaint and *sua sponte* dismiss any claims that are: (1) frivolous or malicious; (2) fail to state a

claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citation omitted).  Thus, ["t]o survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Id.* at 122-23 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

## II.   DISCUSSION

### A.   The Amended Complaint

The amended complaint arises of out Plaintiff's arrest on April 22, 2023, while a passenger of a vehicle in Pleasantville, New Jersey.  The defendants, sued in their individual and official capacities, include:  Pleasantville Police Department Officers Xzavier Evans, Kendall Washington, Miracle Mays, Matthew Laielli, Arturo Bruno, M. Lugo, and John Doe Officer Badge #726 (collectively, "the Police Officer Defendants"), Pleasantville Police Department Chief Law Enforcement Officer James E. Williams, Atlantic County Municipal Court Judge Richard Fauntleroy, Atlantic County Prosecutor William E. Reynolds, New Jersey Public Defender

2

Joseph E. Krakora, State of New Jersey Governor Philip D. Murphy, State of New Jersey Attorney General Matthew J. Platkin, John and Jane Doe Assistant Public Defenders, John and Jane Doe Assistant County Prosecutors, John and Jane Does, and "ABC Partnerships and XYZ Corporations d.b.a. the New Jersey Public Defender," the New Jersey Attorney General's Office, the New Jersey Governor's Office, the City of Pleasantville Police Department Agency, the Atlantic County Justice Facility, the Superior Court of New Jersey (Vicinage 1), Atlantic County, and the "New Jersey Office of Administrative Law ("the State") Official Position:  New Jersey State and Local Government."  (Am. Compl., Dkt. No. 12 at 11-23.)

Plaintiff alleges the following facts, accepted as true for purposes of screening the amended complaint.[1]  On April 3, 2022, Police Officer Xzavier Evans ("Evans") responded to a 9-1-1 call of an anonymous witness[2] who saw a man brandish what appeared to be a handgun before entering a black Chevrolet Impala in an undisclosed

---

[1] Plaintiff attached the following documents as exhibits to the amended complaint:  (1) Affidavit of Truth and Fact by Rogelio L. Lang; (2) Trip Summary dated July 10, 2022 for Chevrolet Impala 2011; (3) Pleasantville Police CAD Activity Detail Report, printed on April 4, 2022; (4) Pleasantville Police Department Incident Report by Xzavier Evans dated 4/3/2022; (5) Pleasantville Police Department Supplemental Reports  by Matthew Laielli, Miracle Mays, Kendall Washington; and (6) a traffic ticket for obstruction of windshield, issued by Xzavier Evans on April 3, 2022; (7) a Complaint Warrant against Christopher N. Jones with charges of violating:  N.J.S.A. § 2C:35-5(b)(11)(A) [manufacturing, distributing or dispensing marijuana, one ounce or more but less than 5 pounds]; N.J.S.A. § 2C-35-10A(1) [manufacturing, distributing or dispensing marijuana, 25 pounds or more]; and N.J.S.A. § 2C:35-5B(3) [manufacturing, distributing or dispensing heroin or cocoa leaves or chemical equivalents, less than one half ounce]; (8) Atlantic County Prosecutor Bill for Discovery and Notice to Attorney.

[2] Plaintiff later submitted a transcript of the 9-1-1 call as an attachment to the amended complaint.  (Dkt. No. 13.)  The caller identified himself as a person who lives at 301 W. Delilah Road, Apartment T-7, in Pleasantville, New Jersey.

area of the Pleasant Manor/Pleasant Acres apartment complex in Pleasantville, New Jersey. (Am. Compl., Dkt. No. 12 at 23.) According to Plaintiff, Evans was the first officer to arrive in the area of 301 W. Delilah Road, approximately two minutes after the 9-1-1 call was broadcast. (Am. Compl., Dkt. No. 12 at 24, 36.) Evans did not conduct any investigation of the 9-1-1 caller's report of a male brandishing a handgun. (*Id.* at 37.) Instead, Evans observed Plaintiff, who is black, walk up to and enter the front passenger seat of a black Chevrolet Impala, just after it parked in the designated parking spot for apartment U-8. (*Id.* at 24, 37, 41.) As soon as the Impala moved out of the parking space, Evans pulled behind it and initiated what Plaintiff alleges was a racially-motivated traffic stop, because Evans did not witness or observe any traffic violation or criminal activity. (*Id.* at 24, 37-38, 41.) Plaintiff alleges there was another black Chevrolet Impala parked in front of apartments T-3 and T-4, and the men near that car were not black. (*Id.* at 37.) Moreover, the black Chevrolet Impala ('the Impala") Plaintiff entered did not arrive in the area until after the anonymous caller's tip was received. (*Id.* at 38.)

Once the Impala was stopped, multiple marked police cars arrived and surrounded the stopped vehicle. (*Id.* at 24-25.) Evans, assisted by Defendants Matthew Laielli, Kendall Washington, Miracle Mays, Arturo Bruno and M. Lugo, pointed their loaded firearms at Plaintiff, ordered him to exit the car and, Plaintiff alleges, threatened to kill him if he did not comply. (*Id.* at 25.) Plaintiff exited the vehicle, and the Defendant Police Officers ordered Plaintiff to lift his jacket and shirt to expose his waistline, and Plaintiff complied. (*Id.*) The Defendant Police Officers

ordered Plaintiff to walk backward with his hands in the air, and Evans grabbed one of Plaintiff's hands to handcuff him.  (*Id.* at 25-26.)  Another officer assisted by grabbing Plaintiff's cell phone out of his other hand.  (*Id.*)  Evans performed a pat-search of Plaintiff's body and peeked inside the man-purse Plaintiff was wearing under his jacket.  (*Id.* at 26.)  Evans did not discover a weapon.  (*Id.*)  Another officer conducted a second search of Plaintiff's man-purse, and while rummaging through it, allegedly discovered a 38-calibur handgun and pills believed to be Ecstasy and Fentanyl.  (*Id.* at 27.)  The Defendant Police Officers transported Plaintiff to the Pleasantville Police Department.  (*Id.*)

Upon arriving at Pleasantville Police Department, Plaintiff refused instructions to provide his fingerprints.  (*Id.*)  Plaintiff was taken to the Atlantic County Justice Facility without being informed of or presented with a sworn complaint or any charging instrument.  (*Id.*)  In Atlantic County Justice Facility, on April 3, 2022, Plaintiff refused to provide his fingerprints unless presented with a citizen's complaint or criminal charging document, and Plaintiff requested to make a phone call to his attorney.  (*Id.* at 28.)  Unidentified individuals allegedly refused Plaintiff's request for a phone call and a shower.  (*Id.*)  Plaintiff claims he was forced to sleep in a dry cell on the floor, wearing full metal restraints around his wrists,

torso and ankles.  (*Id.*)  Plaintiff alleges this was retaliation for his refusal to provide fingerprints.  (*Id.*)

On April 4, 2022, Plaintiff refused to eat unless he was allowed a phone call and to remove or loosen his restraints.  (*Id.*)  Unidentified staff ignored his request. (*Id.*)  Plaintiff's numerous requests to use the toilet were denied, and he remained under these conditions in a cell contaminated with urine and feces until April 8, 2022.  (*Id.* at 29.)  On April 8, 2022, Plaintiff requested medical attention, food and water.  (*Id.*)  Unidentified staff agreed to grant Plaintiff's request, and to allow him a shower after he cooperated with fingerprinting and a mug shot.  (*Id.*)

Plaintiff made multiple appearances in court and challenged the court's jurisdiction.  (*Id.* at 32.)  Plaintiff contends Evans' complaint, affidavit and incident report, and the supplemental reports of the assisting police officers, were deliberately fabricated to induce Defendant Municipal Court Judge Richard Fauntleroy to make findings of probable cause and issue an arrest warrant.  (*Id.* at 41-42.)

For his claims against Xzavier Evans, Kendall Washington, Miracle Mays, Matthew Laielli, Arturo Bruno, M. Lugo, and John Doe Officer Badge #726, Plaintiff alleges unlawful search and seizure for the traffic stop on April 3, 2022, excessive force during arrest by pointing loaded handguns at Plaintiff and threatening to kill him, false arrest for failing to investigate the 9-1-1 caller report, and unreasonable search and seizure of his person after the traffic stop, during which

time Plaintiff allegedly complied with the officers' instructions and did not attempt to pull away from the officers or reach into or conceal his purse.   (*Id.* at 42-43.)

For his claims against Chief Law Enforcement Officer James M. Williams, Plaintiff alleges he failed to train and supervise his employees in performance of their duties involving a high-risk traffic stop, which resulted in the officers performing an unlawful traffic stop and unlawful search and seizure of Plaintiff's person, excessive force against Plaintiff upon his arrest, and false arrest and imprisonment.  (Am. Compl., Dkt. No. 12 at 4, 14-15.)

For his claim against Municipal Court Judge Richard Fauntleroy, Plaintiff alleges he erred in his probable cause finding and issuance of an arrest warrant, which resulted in Plaintiff's false arrest and false imprisonment.  (*Id.* at 4-5, 15-16.) Plaintiff also alleges Municipal Court Judge Richard Fauntleroy is responsible for the practices and procedures of the Defendant Police Officers.[3]  (*Id.* at 5.)

Plaintiff alleges Atlantic County Prosecutor William E. Reynolds and John and Jane Doe Assistant Prosecutors maliciously prosecuted him, knowing the U.S. Supreme Court declared N.J.S.A. 2C:58-4(c) and N.J.S.A. 2C:39-5(b) unconstitutional on June 23, 2022.  (*Id.* at 16-17, 21-22.)  Plaintiff further alleges Public Defender Joseph E. Krakora, through his agents Omar Aguilar, Scott

---

[3] This claim fails on the merits because municipal court judges in New Jersey are not authorized to create policies and procedures for police officers within their municipalities. *See* N.J.S.A. § 2B:12-17 (Jurisdiction of specified offenses) and N.J. R. MUN. CT. Rules 7:2-1 *et seq.*)

Sherwood, and Maya Rex, failed to provide him competent assistance of counsel in the following ways:  secretly waiving an arraignment appearance, waiving a preliminary hearing, waiving an evidentiary hearing, filing a motion for mental health evaluation and for involuntary civil commitment,[4] and conspiring to deprive Plaintiff of his rights, privileges and immunities.  (Am. Compl., Dkt. No. 12 at 17-19.)

For his claims against New Jersey Governor Philip D. Murphy and Attorney General of New Jersey Matthew J. Platkin, Plaintiff alleges they failed to instruct Atlantic County Prosecutor William E. Reynolds that N.J.S.A. § 2C:58-4(c) and N.J.S.A. 2C:39-5(b) are void under the Supreme Court's *Bruen* decision, and that the Governor and Attorney General are vicariously liable for Plaintiff's malicious prosecution.  (*Id.* at 19-21.)  Plaintiff seeks money damages and injunctive relief.  (*Id.* at 44.)

**B.    42 U.S.C. § 1983 and Analogous Claims under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.***

**1.    Defendants must be "persons" and state actors**

To state a claim under § 1983, a plaintiff must allege the defendants acted under color of state law and deprived the plaintiff of a federally protected constitutional or statutory right.  *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (citations omitted).  "The New Jersey Civil Rights Act is

---

[4] Plaintiff alleges he is currently on a waiting list for transfer to Ancora Psychiatric Hospital under an involuntary civil commitment order.  (Am. Compl., Dkt. No. 12 at 10.)

'interpreted analogously to § 1983,' so [a plaintiff's] claims under that statute rise and fall with his parallel § 1983 claims." *Mervilus v. Union Cnty.*, 73 F.4th 185, 193 (3d Cir. 2023) (quoting *Est. of Roman v. City of Newark*, 914 F.3d 789, 796 n.5 (3d Cir. 2019). The Court will construe Plaintiff's federal and state civil rights claims under § 1983 jurisprudence.

"[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Beaver v. Union Cnty. Pennsylvania*, 619 F. App'x 80, 83 (3d Cir. 2015) (citing *Polk*, 454 U.S. at 325). Plaintiff's allegations of misconduct and ineffective assistance by his public defenders arise out of their performance of traditional functions of criminal defense lawyers. Thus, Plaintiff fails to state a claim under § 1983 or the New Jersey Civil Rights Act, N.J.S.A. § 10:6-1 *et seq.* ("NJCRA") against New Jersey Public Defender Joseph E. Krakora and the John and Jane Doe Assistant Public Defenders. Plaintiff's claim against the Public Defender's Office also arises from its employees' representation of Plaintiff in his criminal proceedings. There is no respondeat superior liability under § 1983. *Nelson v. Dauphin Cnty. Pub. Def.*, 381 F. App'x 127, 128 (3d Cir. 2010) (dismissing § 1983 claim against Public Defender's Office) (citation omitted). Therefore, the Court will dismiss with prejudice Plaintiff's claim against the Public Defender's Office, sued

here as "ABC Partnerships and XYZ Corporations d.b.a. the New Jersey Public
Defender."

Although counties are "persons" who may be sued under § 1983, local
government subdivisions that are not legally distinct from the local government itself
are not subject to suit under § 1983.  *Forman v. Montgomery Cnty. Corr. Facility*, No.
CV 19-5300, 2020 WL 620255, at *2 (E.D. Pa. Feb. 7, 2020) (citing *Monell v. New
York City Dept. of Soc. Serv.*, 436 U.S. 658 (1978)).  The capacity to be sued is
governed by the law of the state where the court is located.  Fed. R. Civ. P. 17(b).
Under New Jersey law, "[n]aming the police department as a defendant is legally
equivalent to naming the municipality."  *Pearson v. Borough of Keansburg*, No. A-3762-
20, 2022 WL 13683992, at *6 (N.J. Super. Ct. App. Div. Oct. 24, 2022).  Therefore,
the Court will construe Plaintiff's § 1983 and NJCRA claims alleged against the
entity "Pleasantville Police Department" as if they were brought against the City of
Pleasantville.  Those claims are addressed below.

Plaintiff has also named Atlantic County Justice Facility as a defendant.
Atlantic County Justice Facility is not a local government that can be sued under §
1983.  *See Monell*, 436 U.S. at 694 ("it is when execution of a government's policy or
custom, whether made by its lawmakers or by those whose edicts or acts may fairly
be said to represent official policy, inflicts the injury that the government as an entity
is responsible under § 1983); *Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir.
2013) (unpublished) ("Westmoreland County Prison is not a person capable of being

10

sued within the meaning of § 1983.")  The Court will dismiss with prejudice the §
1983 and NJCRA claims against Atlantic County Justice Facility.

### 2.    Frivolous Claims

Plaintiff alleges New Jersey Governor Philip D. Murphy and Attorney
General Matthew J. Platkin violated his constitutional rights by failing to instruct
Atlantic County Prosecutor William E. Reynolds that the Supreme Court declared
N.J.S.A. § 2C:58-4(c) and N.J.S.A. § 2C:39-5(b)(1) unconstitutional, which
invalidates his arrest and prosecution.  The Supreme Court in *Bruen* held that "the
Second and Fourteenth Amendments protect an individual's right to carry a handgun
for self-defense outside the home."  *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
142 S. Ct. 2111, 2122 (2022).  In a concurring opinion, Justice Alito explained, "[a]ll
that we decide in this case is that the Second Amendment protects the right of law-
abiding people to carry a gun outside the home for self-defense and that the Sullivan
Law, which makes that virtually impossible for most New Yorkers, is
unconstitutional."  *Id.* at 2159 (Alito, J. concurring).  Justice Kavanaugh explained
in his concurring opinion, "the Court's decision does not prohibit States from
imposing licensing requirements for carrying a handgun for self-defense."  *Id.* at 2161
(Kavanaugh, J. concurring).  The Supreme Court in *Bruen* did not hold that States
may not require gun permits, nor did it hold that States may not place any

restrictions on gun ownership.  The New Jersey Superior Court, Appellate Division

recently held:

> [t]he Supreme Court's jurisprudence on the Second
> Amendment makes clear that carrying guns in public can
> still be regulated and subject to a permit requirement.
> Consequently, at a minimum, New Jersey's gun-permit
> statutes were and continue to be constitutional in requiring
> background checks to confirm that the applicant is not a
> convicted felon or does not have a mental disability and to
> ensure that the applicant has reasonable training in the safe
> handling of guns…. In short, N.J.S.A. 2C:39-5(b)(1) was
> constitutional and enforceable at the time of defendants'
> arrest.

*State v. Wade*, 476 N.J. Super. 490, 510–11 (App. Div. 2023), *leave to appeal denied*,

No. 088604, 2023 WL 7297945 (N.J. Nov. 3, 2023) (internal citations omitted).  The

§ 1983 and NJCRA claims against Governor Philip D. Murphy and Attorney

General Matthew J. Platkin, in their individual capacities, will be dismissed with

prejudice.

### 3.  Immunity

#### a.  Prosecutorial and judicial immunity

Plaintiff also sues prosecutors and judges, who are immune from § 1983 and

NJCRA suits for performance of their traditional duties.  Thus, prosecutors have

absolute immunity for duties performed as advocates during the judicial process.

*Fogle v. Sokol*, 957 F.3d 148, 164 (3d Cir. 2020).  This includes the decision to

prosecute and actions taken in presenting the State's case.  *Id.* (citing *Imbler v.*

*Pachtman*, 424 U.S. 409, 430 (1976)).  Plaintiff's allegations against the Atlantic

County Prosecutor and Assistant Prosecutors are based on actions taken in initiating

and prosecuting his criminal case.  Therefore, Plaintiff's § 1983 and NJCRA claims against William E. Reynolds and John and Jane Doe Assistant County Prosecutors will be dismissed with prejudice based on prosecutorial immunity.

Judges are also entitled to absolute immunity under § 1983, in all but two circumstances:  (1) for nonjudicial actions; and (2) for actions, although judicial in nature, that are taken in complete absence of jurisdiction.  *Mireles v. Waco*, 502 U.S. 9, 12 (1991).  Plaintiff does not allege that Municipal Court Judge Richard Fauntleroy violated his constitutional rights by performing any nonjudicial acts. Thus, Plaintiff must rely on the second exception to immunity, absence of jurisdiction.  Absence of jurisdiction and "in excess of jurisdiction" are distinct.  *Id.* at 356, n. 6 (citing *Bradley v. Fisher*, 80 U.S. 335, 351-52 (1871)).  For example, a probate judge having jurisdiction over wills and estates acts in absence of jurisdiction over a criminal trial; but a criminal court that convicts a defendant of a nonexistent crime is acting in excess of jurisdiction, and is immune from suit under § 1983.  *Id.* at n.7 (citing *Bradley*, 80 U.S. at 351-52).  In New Jersey, a municipal court judge has jurisdiction to make findings of probable cause and issue a Complaint-Warrant (CDR-2).  NJ R MUN CT Rules 7:2-1(d) and 7:2-2.  Municipal Court Judge Richard Fauntleroy is immune from Plaintiff's § 1983 and NJCRA claims because Plaintiff alleges he acted in excess of jurisdiction by issuing an arrest warrant in error.

Therefore, the Court will dismiss the § 1983 and NJCRA claims against Municipal Court Judge Richard Fauntleroy with prejudice.

### b.    Eleventh Amendment Immunity

The Eleventh Amendment "bar[s] all private suits against non-consenting States in federal court…." *Allen v. New Jersey State Police*, 974 F.3d 497, 504 (3d Cir. 2020) (quoting *Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008). Eleventh Amendment immunity, a sovereign immunity, extends to State-affiliated entities that are deemed to be arms of the State. *Id.* (citing *Bradley v. W. Chester Univ. of Pennsylvania State Sys. of Higher Educ.*, 880 F.3d 643, 654 (3d Cir. 2018)). Sovereign immunity also extends to § 1983 claims for damages brought against state officials in their official capacities. *Id.* at 506 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted in *Allen*) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") Eleventh Amendment immunity applies to state law claims as well as federal claims brought in federal court. *Allen*, 974 F.3d at 505 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). New Jersey has not waived sovereign immunity for § 1983 actions. *Id.* (citing *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 819 F.2d 413, 418 (3d Cir. 1987),

*abrogated on other grounds by Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994)).

To begin, Plaintiff's § 1983, NJCRA and state law claims for money damages against all New Jersey State employees and officials in their official capacities will be dismissed with prejudice based on their Eleventh Amendment immunity.  *See*, *e.g.*, *Hussein v. New Jersey*, 403 F. App'x 712, 715 (3d Cir. 2010) ("The governor of New Jersey 'enjoy[s] sovereign immunity in federal court.'")  The Court must also determine which of the State-affiliated entities who are named as defendants are "arms of the State," and therefore, entitled to Eleventh Amendment immunity. "[T]he Supreme Court has held since 1890 that counties and similar political subdivisions of the state are not entitled to eleventh amendment immunity."  *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 661 n.3 (3d Cir. 1989) (citations omitted).   Therefore, Atlantic County and City of Pleasantville do not have Eleventh Amendment immunity.  To determine whether an entity is an arm of the State, the Third Circuit weighs the following factors: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Messina v. Coll. of New Jersey*, 624 F. Supp. 3d 523, 527 (D.N.J. 2022)  (quoting *Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir. 2007)).

The New Jersey Office of Administrative Law is a state agency entitled to Eleventh Amendment immunity.  *Rodrigues v. Fort Lee Bd. of Educ.*, 458 F. App'x 124, 127 (3d Cir. 2011) (citation omitted).  The Office of the Attorney General of New

Jersey is likewise entitled to Eleventh Amendment immunity. *May v. Irvington Police Dep't*, No. 2:15-CV-764 (CCC), 2016 WL 236212, at *2 (D.N.J. Jan. 19, 2016) (citing *Malcomb v. Beaver Cnty. Perm. (Prothonotary)*, 616 Fed. App'x 44, 45 (3d Cir. 2015), as is the Office of the Governor of New Jersey. *See Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234, 240 (3d Cir. 2020) ("Because the relief nominally sought from the Governor in this case would operate against the State itself, New Jersey is the real, substantial party in interest.") New Jersey Superior Courts are arms of the State entitled to Eleventh Amendment immunity. *Villarreal v. New Jersey*, 803 F. App'x 583, 587 (3d Cir. 2020). Therefore, the Court will dismiss with prejudice Plaintiff's due process claim based on the alleged lack of jurisdiction over Plaintiff's criminal prosecution by the Superior Court of New Jersey (Vicinage I). (Am. Compl., Dkt. No. 12 at 32-33.)

"Because local governmental bodies and their officials are "persons" under §§ 1983 and 1985 [conspiracy to deprive citizen of rights], and state agencies and their officials acting in their official capacity are not," courts must decide whether county prosecutor offices are arms of the State of New Jersey or of the county. *Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 854 (3d Cir. 2014). When county prosecutors are acting in "classic law enforcement and investigative functions, they act as officers of the State." *Id.* at 855 (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996)). Conversely, county prosecutors are acting as county officials when

they "perform administrative functions 'unrelated to the duties involved in criminal prosecution[.]'" *Id.*

Plaintiff's claims against the Atlantic County Prosecutor's Office are based on Plaintiff's criminal prosecution. Therefore, the Atlantic City Prosecutor's Office has Eleventh Amendment immunity, and the claims against it will be dismissed. Similarly, the Attorney General of New Jersey enjoys sovereign immunity in his official capacity, and the Office of the Attorney General is an arm of the state, entitled to Eleventh Amendment immunity. *Tucker v. City of Philadelphia*, No. CV 19-12946, 2023 WL 4248814, at *7 (D.N.J. June 29, 2023) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 71 (1989); *Hockaday v. New Jersey Att'y Gen.'s Off.*, No. 16-0762 (KM), 2016 WL 6694483, at *1 (D.N.J. Nov. 14, 2016)). These claims will also be dismissed with prejudice based on Eleventh Amendment immunity.

### 4.     Fourth Amendment Claims

Plaintiff's Fourth Amendment unlawful search and seizure, false arrest, false imprisonment, and excessive force claims may proceed at this time against Defendants Xzavier Evans, Kendall Washington, Miracle Mays, Matthew Laielli,

Arturo Bruno, M. Lugo, and John Doe Officer Badge #726.  Such claims may be subject to dismissal as discovery proceeds.

### 5.    Section 1983 Liability of Supervisors and Local Governments

### a.    Supervision of Police Officers

Plaintiff alleges James M. Williams, Chief Law Enforcement Officer of the City of Pleasantville, the City of Pleasantville itself, and Atlantic County are liable for failing to train or supervise their employees, resulting in violations of Plaintiff's constitutional rights.  Neither supervisors nor local governments are liable under § 1983 for the unconstitutional acts of their employees on a theory of respondeat superior liability.  *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 580, 586 (3d Cir. 2004).  To state a § 1983 claim against a local government or a supervisor in his/her individual capacity based on failure to train employees, a plaintiff must allege that the defendant, as a policymaker, was on actual or constructive notice of the training deficiency, thus creating an inference of deliberate indifference "that a particular omission in their training program causes [their] employees to violate citizens' constitutional rights."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 520 U.S. 397, 407 (1997) (municipal liability);  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *cert. granted*, judgment *rev'd* [on other grounds] *sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015) ("'Failure to' claims—failure to train, failure to discipline, or … failure to supervise—are generally considered a subcategory of

policy or practice liability.")  Ordinarily, a plaintiff must allege "[a] pattern of similar constitutional violations by untrained employees … to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 562 U.S. at 62 (citing *Bryan Cty.*, 520 U.S. at 409)).  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Additionally, 'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. at 391.))  A plaintiff may state a claim of "'single-incident' failure-to-train [where] it is obvious that a failure to provide such training" would lead to constitutional violations. *Id.* at 223.  For example, local government policymakers would know that police officers will be armed and required to pursue fleeing felons; therefore, a policymaker would know police must be trained in the use of deadly force. *Id.*

Plaintiff has not identified a *specific* training or supervisory deficiency that caused any of his alleged constitutional violations, nor has he alleged *a pattern of similar constitutional violations*.  Furthermore, none of Plaintiff's claims of unlawful search and seizure, false arrest and imprisonment, and excessive force upon arrest involve such an obvious threat of constitutional violations that the policymaker or supervisor defendants are subject to "single incident" failure to train or supervise

claims.  Therefore, Plaintiff's § 1983 and NJCRA claims against Chief Law

Enforcement Officer James M. Williams, in his individual capacity, and the claims

against the City of Pleasantville will be dismissed without prejudice.

### b.    Supervision of Jail Staff

Plaintiff alleges violation of his substantive due process rights under the

Fourteenth Amendment based on excessive use of restraints used on him in Atlantic

County Justice Facility, and unconstitutional conditions of confinement in his

holding cell, where his numerous requests to use a toilet were allegedly denied for

several days, forcing him to urinate and defecate in a dry cell where he was held for

several days.  (Am. Compl., Dkt. No. 12 at 28-29.)  Plaintiff's Fourteenth

Amendment claims may proceed against John and Jane Doe Defendants, but

Plaintiff must discover their identities and file a second amended complaint before

those defendants can be served.  Plaintiff has not alleged sufficient facts to establish

this Fourteenth Amendment claim arose from a policy or custom of Atlantic County.

Furthermore, Plaintiff's retaliation claim against John and Jane Doe Defendants will

be dismissed without prejudice because Plaintiff was not exercising a constitutional

right by refusing to be fingerprinted.  *See Roesch v. Ferber*, 48 N.J. Super. 231, 239, 137

A.2d 61, 66 (App. Div. 1957) (fingerprinting and photographing are not an

additional penalty imposed on pretrial detainee but "are purely incidental to proper

law enforcement"); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (a prisoner

alleging retaliation must show, among other things, a causal link between his

exercise of a constitutional right and an adverse action taken against him).

## C.    STATE LAW CLAIMS

Plaintiff asserts fraud claims against Evans, Laielli, Mays and Washington for alleged false statements in their incident and supplemental reports concerning Plaintiff's traffic stop, searches, and arrest.  (Am. Compl., Dkt. No. 12 at 41-43.) Plaintiff brings his state law fraud claims under N.J.S.A. § 25:1 *et seq.* [Statute of Frauds] and N.J.S.A. § 2C:28-1 [perjury] and 4 [false reports to law enforcement]. (*Id.* at 40.)[5]  The New Jersey Statute of Frauds, N.J.S.A. § 25:1-10 *et seq.*, governs contract law, not personal injury claims.  "[P]erjury is a criminal offense that does not give rise to a private cause of action."  *Harmon v. Holmes*, 712 F. Supp. 451, 454 (D.N.J. 1989) (citing N.J.S.A. § 2C:28–1 (West 1982)).  False reports to law enforcement agencies, N.J.S.A. § 2C:28-4 is also a criminal offense that does not create a private cause of action against a police officer for alleged false statements in an arrest report.  *See Coleman v. Acad. Bus LLC*, 858 F. App'x 584, 585 (3d Cir. 2021) (stating there is no private civil cause of action for claims under the New Jersey Criminal Code).  Plaintiff's state law fraud claims will be dismissed with prejudice.

## III.    CONCLUSION

For the reasons stated above, the amended complaint may proceed in part and is dismissed in part.

---

[5] Plaintiff also asserts these defendants committed perjury in violation of 18 U.S.C. § 1001 *et seq.*  There is no civil private cause of action for violation of 18 U.S.C. § 1001.  *Davis v. Jordan*, 573 F. App'x 135, 137 (3d Cir. 2014).

An appropriate Order follows.


DATE:  **November 30, 2023**          s/Renée Marie Bumb
                                      Renée Marie Bumb
                                      Chief United States District Judge